UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>v.<br><br>RUBEN ARROYO,<br><br>        Defendant. | Case No. 05-cr-40028-JPG |

## MEMORANDUM AND ORDER

This matter comes before the Court on defendant Ruben Arroyo's *pro se* motion for compassionate release pursuant to the First Step Act of 2018, Pub. L. No. 115-391, § 603(b)(1), 132 Stat. 5194, 5239 (2018) (codified at 18 U.S.C. § 3582(c)(1)(A)) (Doc. 391). The Government has responded to the motion (Doc. 395).

**I.   Compassionate Release**

The First Step Act expanded the existing compassionate release provisions of federal law by opening the door for a defendant to move for compassionate release rather than only allowing the Director of the Bureau of Prisons ("BOP") to so move. First Step Act, § 603(b)(1) (codified at 18 U.S.C. § 3582(c)(1)(A)); *United States v. Gunn*, 980 F.3d 1178, 1179 (7th Cir. 2020). The relevant portion of the law provides:

> **(c) Modification of an imposed term of imprisonment.**—The court may not modify a term of imprisonment once it has been imposed except that—
>     (1) in any case—
>         (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after

> considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
> > (i) extraordinary and compelling reasons warrant such a reduction. . .
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission. . . .

18 U.S.C. § 3582(c)(1)(A).

As for the final clause of § 3582(c)(1)(A), there is no applicable Sentencing Commission policy statement regarding motions for compassionate release filed by defendants. *Gunn*, 980 F.3d at 1180. The existing compassionate release policy statement, United States Sentencing Guidelines Manual ("U.S.S.G.") § 1B1.13, applies only to motions filed by the BOP, not defendants themselves, "[a]nd because the Guidelines Manual lacks an applicable policy statement, the trailing paragraph of § 3582(c)(1)(A) does not curtail a district judge's discretion." *Id.* Nevertheless, the substantive aspects of U.S.S.G. § 1B1.13 provide a "working definition" of "extraordinary and compelling reasons" that should guide the Court's discretion without strictly confining it. *Id.* A court that "strikes off on a different path risks an appellate holding that judicial discretion has been abused." *Id.* Additionally, the Court should give substantial weight to the BOP's analysis regarding "extraordinary and compelling reasons" in any particular case. *Id.*

So the Court looks to U.S.S.G. § 1B1.13 for guidance. That policy statement adds the provision that the defendant must not be a danger to the safety of any other person or to the community. U.S.S.G. § 1B1.13(2).[1] The application notes further define "extraordinary and compelling reasons" to include, as relevant for this case:

---

[1] This provision is similar, but not identical, to 18 U.S.C. § 3553(a)(2)(C), which requires the Court to consider the need for the sentence "to protect the public from further crimes of the defendant."

2

    **(A)**    **Medical Condition of the Defendant.—**
        (i)      The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
        (ii)     The defendant is—
            (I)      suffering from a serious physical or medical condition,
            (II)     suffering from a serious functional or cognitive impairment, or
            (III)    experiencing deteriorating physical or mental health because of the aging process,
that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

\* \* \*

    **(C)**    **Family Circumstances.**
        (i)      The death or incapacitation of the caregiver of the defendant's minor child or minor children.
        (ii)     The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

    **(D)**    **Other Reasons.—**As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

U.S.S.G. § 1B1.13 cmt. n. 1.

Thus, for a defendant to be eligible for compassionate release he must have exhausted his administrative remedies,[2] and the Court must find that (1) extraordinary and compelling reasons for release exist, and (2) considering the applicable factors in 18 U.S.C. § 3553(a), the extraordinary and compelling reasons warrant release. 18 U.S.C. § 3582(c)(1)(A). The movant bears the burden of making such a showing, and the Court has discretion to determine whether the defendant satisfied that burden. *United States v. Newton*, 996 F.3d 485, 488 (7th Cir. 2021);

---

[2] The exhaustion requirement is not jurisdictional and may be waived by the Government. *Gunn*, 980 F.3d at 1179.

*Gunn*, 980 F.3d at 1180.  The Court uses U.S.S.G. § 1B1.13 cmt. n. 1 to guide its discretion in this regard and should give great weight to the BOP's analysis regarding "extraordinary and compelling reasons," if it has given any such analysis.  *Gunn*, 980 F.3d at 1180.  The Court now turns to the specifics of the defendant's case.

**II.     Analysis**

In February 2006, Arroyo pled guilty to one count of conspiracy to distribute 50 grams or more of crack cocaine, 5 kilograms or more of powder cocaine, and 500 grams or more of a mixture and substance containing methamphetamine (Count 1) and five counts of distribution of either less than 500 grams or more of powder cocaine (Counts 2, 3 & 5), 50 grams or more of crack cocaine (Count 4), or 50 grams or more of a mixture and substance containing methamphetamine (Count 6).

At Arroyo's sentencing in June 2006, the Court found that his relevant conduct, comprising crack cocaine and other drugs, was at least 30,000 kilograms (66,115 kilograms, to be specific) of marihuana equivalency units, which under U.S.S.G. § 2D1.1[3] yielded a base offense level of 38.  His offense level was increased by 2 points under U.S.S.G. § 2D1.1(b)(1) for possession of a dangerous weapon, by 3 points under U.S.S.G. § 3B1.1(b) for being a manager or supervisor, and by 2 points under U.S.S.G. § 3B1.4 for using a minor to commit the offense.  It was decreased by 3 points under U.S.S.G. § 3E1.1 for acceptance of responsibility, yielding a total offense level of 42.

Considering Arroyo's criminal history category of III, this yielded a guideline sentencing range of 360 months to life on Counts 1 and 4, 240 months on Counts 2, 3 and 5 (limited by the

---

[3] Unless otherwise noted, the references to the guidelines in this order are to the 2005 United States Sentencing Guidelines Manual.

statutory maximum sentence pursuant to U.S.S.G. § 5G1.1(a)), and 360 to 480 months on Count 6 (also limited under U.S.S.G. § 5G1.1(a)). The Court imposed a sentence of 420 months on Counts 1, 4 and 6, and 240 months on Counts 2, 3 and 5, all to run concurrently. The Court later reduced the total sentence to 276 months pursuant to § 404 of the First Step Act (Doc. 389). Arroyo's projected release date is January 17, 2025. *See* BOP, Find an Inmate, https://www.bop.gov/inmateloc/ (visited June 17, 2022).

Arroyo now asks the Court for compassionate release because of the risk posed to him and other inmates by COVID-19 because of their tight confinement in circumstances where they cannot take the precautionary measures recommended by the CDC. He notes he is a non-violent offender, has served over 86% of his sentence, is in a low security facility, is within the BOP's "low risk" recidivism category, and has participated in numerous prison classes and programs to improve himself and prevent his return to illegal activities. He notes that when released, he is needed as the primary caretaker for his elderly parents, will get a job, and will be covered by health insurance. He believes the existing vaccines against COVID-19 are not effective against the now predominant Omicron variant. The Warden at Arroyo's institution denied compassionate release because Arroyo did not show any circumstances justifying release under BOP rules.

In response, the Government argues that Arroyo cannot show COVID-19 poses an extraordinary and compelling reason for release because, although he received a two-dose initial vaccine, he has refused a vaccine booster without any legitimate reason. The Government further argues that Arroyo's desire to care for his ill father is not an extraordinary and compelling reason for release but is in fact an ordinary situation faced by many inmates who have ill or aging parents. It notes that Arroyo has not shown he is the only caregiver available for his father

and that other family members have assisted him in the recent past. Finally, the Government argues that Arroyo is still a danger to the safety of the community and does not warrant release under the factors listed in 18 U.S.C. § 3553(a). The Government has not invoked exhaustion of remedies as a defense, so has waived that argument.

Arroyo does not argue that, because of his health condition, he is at higher risk than any other inmate of suffering the harmful effects of COVID-19. The Court acknowledges the particular danger posed to prisoners, who live in close quarters and often cannot practice social distancing. "But the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release . . . ." *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020). Furthermore, the BOP has already administered more than 358,000 doses of a COVID-19 vaccine in total and has vaccinated approximately 1,022 of the approximately 1,120 inmates at FCI-Sandstone, where Arroyo is currently incarcerated, *see* BOP, COVID-19 vaccine implementation, https://www.bop.gov/coronavirus/ (visited June 17, 2022), which will greatly reduce the threat to inmates from the disease.

Arroyo received two initial vaccine doses but has declined a booster. It is an uphill battle to show extraordinary and compelling circumstances based on COVID-19 where the inmate has refused to be vaccinated against the disease or to accept a booster offered to him. "A prisoner who can show that he is unable to receive or benefit from a vaccine still may turn to [the compassionate release] statute, but, for the vast majority of prisoners, the availability of a vaccine makes it impossible to conclude that the risk of COVID-19 is an 'extraordinary and compelling' reason for immediate release." *United States v. Broadfield*, 5 F.4th 801, 803 (7th Cir. 2021); *accord United States v. Kurzynowski*, 17 F.4th 756, 760-61(7th Cir. 2021); *United*

6

*States v. Ugbah*, 4 F.4th 595, 597 (7th Cir. 2021) (recognizing "prisoners who have access to a vaccine cannot use the risk of COVID-19 to obtain compassionate release"). The same holds true for inmates who refuse a booster. *See United States v. Clemons*, No. 21-2440, 2022 WL 1436801, at *2 (7th Cir. May 6, 2022). As the *Broadfield* court recognized, "a prisoner who remains at elevated risk because he has declined to be vaccinated cannot plausibly characterize that risk as an 'extraordinary and compelling' justification for release. The risk is self-incurred." *Broadfield*, 5 F.4th at 803. Arroyo has not shown he is unable to benefit from a vaccine booster. In such circumstances, the Court will not allow the defendant's claim for release to be bolstered by his own failure to take the simplest, cheapest, most effective precautions against the danger he fears. There are simply no extraordinary and compelling reasons to release the defendant.

Even if there were extraordinary and compelling reasons for compassionate release, it is still important for Arroyo to serve the remainder of his already reduced sentence in prison because of the seriousness of his offenses and his continued disregard for rules. The Court's analysis of the § 3553(a) factors at the sentencing hearing continue to apply now. Arroyo's crimes were serious—involving large amounts of drugs, the use of guns, and the use of minors— and Arroyo played a leadership role. This seriousness was reflected in the Court's original consideration of the § 3553(a) factors and imposition of a hefty sentence. Furthermore, the Court acknowledges Arroyo's incredibly positive changes and accomplishments since he has been in prison, which the Court has already factored into its decision to reduce Arroyo's sentence to 276 months under § 404 of the First Step Act. Nevertheless, Arroyo recently committed several disciplinary violations, which shows there is still room for improvement before he is released into society again. Even in light of his positive steps, a sentence of 276 months is appropriate—sufficient but no more than necessary—as punishment for his crimes. Anything

less would undermine the gravity of his offense and would not promote respect for the law, which is apparently still challenging Arroyo as evidenced by his recent rule violations. The Court notes that there is a good chance Arroyo will be designated to serve the tail end of his sentence at home or in the community, where he might be able to assist his ailing parents, but that is a decision for the BOP, not for the Court. *See* 18 U.S.C. § 3624(c).

### III.   Conclusion

For all of these reasons, the Court **DENIES** Arroyo's motion for compassionate release (Doc. 391).

**IT IS SO ORDERED.**
**DATED:  June 21, 2022**

> s/ J. Phil Gilbert
> **J. PHIL GILBERT**
> **DISTRICT JUDGE**